IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 5:10-CV-191 (MTT) ) |
| PEN PALS PRODUCTIONS, LLC, *et. al*, | ) ) |
| Defendants. | ) ) |

# ORDER

This matter is before the Court on Plaintiff North American Specialty Insurance Company's Motion for Summary Judgment (Doc. 39) and NES Equipment Services Corporation's Cross-Motion for Summary Judgment (Doc. 61). For the following reasons, the Motion for Summary Judgment is **DENIED** and the Cross-Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

## I. FACTUAL BACKGROUND

This declaratory judgment action arises out of a wrongful death lawsuit filed by Michael and Kathy Lamensdorf, *Lamensdorf v. Welin*, 5:09-CV-424 (MTT). The Lamensdorfs' son, John, received a fatal electrical shock when an aerial lift came into contact with overhead power lines while he was working on the set of a film entitled "Lovely Lying Lips" directed by Stephen Michael Simon, one of John Lamensdorf's New York University classmates. The Lamensdorfs filed suit against numerous parties, including Pen Pal Productions, LLC, a company formed by Simon's father, and NES, the company from which the aerial lift was rented. NES asserted a crossclaim against Pen Pals alleging that Pen Pals had a duty to indemnify it pursuant to an indemnity provision in

the Rental Agreement. The facts are set forth in detail in an order entered this date in *Lamensdorf v. Welin*, 5:09-CV-424 (MTT).

North American, Pen Pals' insurer, filed this action seeking a declaration that its Commercial General Liability policy provides no coverage for the claims asserted against Pen Pals. North American then moved for summary judgment on the grounds that (1) the employee-injury exclusion in its policy excludes coverage for the Lamensdorfs' claims and (2) NES' claims are not covered by its policy because NES' claims are based in contract. NES filed its Cross-Motion for Summary Judgment alleging that coverage exists because the Rental Agreement with Pen Pals falls within the "insured contract" exception to the employee-injury and "contractual liability" exclusions.[1]

## II. DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

---

[1] The Cross-Motion is similar to a response, and it is difficult to determine what relief NES seeks. This declaratory judgment action serves to determine coverage, not liability, pursuant to the policy. The Court will assume NES seeks a declaration that the Rental Agreement is an insured contract. To the extent NES' cross-motion seeks any relief beyond a declaration that the Rental Agreement is an insured contract, such as a determination that Pen Pals was the customer to the Rental Agreement, it is denied.

The Eleventh Circuit recently summarized Georgia law on insurance policy interpretation, stating:

> Georgia law directs courts interpreting insurance policies to ascertain the intention of the parties by examining the contract as a whole. A court must first consider the ordinary and legal meaning of the words employed in the insurance contract…. Parties to the contract of insurance are bound by its plain and unambiguous terms. If the terms of the contract are plain and unambiguous, the contract must be enforced as written…. Georgia law teaches that an ambiguity is duplicity, indistinctness, an uncertainty of meaning or expression. When a term in a contract is ambiguous, Georgia courts apply the rules of contract construction to resolve the ambiguity. Pursuant to Georgia's rules of contract construction, the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Further, ambiguities are construed against the drafter of the contract (i.e., the insurer), and in favor of the insured. If the ambiguity remains after the court applies the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by the finder of fact.

*Alea London Ltd. v. American Home Servs., Inc.*, 2011 WL 1437003, at *3 (11th Cir. 2011) (quotations and internal citations omitted).

**A. Coverage for the Lamensdorfs' claims against Pen Pals**

Here, North American argues that it has no duty to defend or indemnify Pen Pals against the Lamensdorfs' claims due to the employee-injury exclusion in the policy. Pursuant to the policy, North American agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 39-9, at 7). Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 39-9, at 19). However, the North American policy excludes coverage for bodily injury to "an 'employee' of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business…." (Doc. 39-9, at 8). An endorsement to the policy defines "employee"

as "a 'leased worker,' 'temporary worker,' 'volunteer worker,' and any person subject to the guidance, instruction, or direction of you or anyone acting on your behalf, including, but not limited to, crew and actors."[2] (Doc. 39-10). The term "volunteer worker" is defined to mean "a person who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." *Id.*

North American contends that John Lamensdorf falls within either the third or fourth category of employee, i.e., volunteer worker or any person subject to the guidance, instruction, or direction of Pen Pals or anyone acting on behalf of Pen Pals. Specifically, North American argues that "[John] Lamensdorf was subject to the guidance, direction and instruction of [Director of Photography Andrew] White who was in turn subject to the guidance, direction and instruction of Simon." (Doc. 39-1, at 11).

The Lamensdorfs argue that their son was not a volunteer worker because, although he was not paid a fee, he was not acting within the scope of duties determined by Pen Pals. This illustrates a difference between the definition of volunteer worker and the fourth category of employee. To be a volunteer worker, the worker must be acting "at the direction of and within the scope of duties determined by [Pen Pals]." (Doc. 39-10). The fourth category of employee is broader because it includes "any person subject to the guidance, instruction, or direction of [Pen Pals] *or anyone acting on [its] behalf….*" *Id.* (emphasis added).

Specifically, the Lamensdorfs argue that their son was under the direction of White and that there is no evidence that their son acted at the direction of Pen Pals and within

---

[2] The terms "you" and "your" refer to "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under [the] policy." (Doc. 39-9, at 7).

the scope of duties determined by Pen Pals. Therefore, John Lamensdorf, the Lamensdorfs argue, was not a volunteer worker.

Similarly, the Lamensdorfs argue that their son did not fall within the fourth category of employee because he was not subject to the guidance, instruction, or direction of Pen Pals *or anyone working on its behalf*. This argument is somewhat tougher for the Lamensdorfs. It is relatively clear that Simon was working on Pen Pals' behalf. However, the Lamensdorfs claim that White was not subject to the guidance, instruction, or direction of Simon. The Lamensdorfs cite deposition testimony from Simon in which he stated that he did not work on lights and that White was in charge of lights. (Doc. 54, at 15). Further, Simon never mentioned anything about Pen Pals to his NYU classmates. Although several of his classmates knew that Simon had created the production company, with regard to "Lovely Lying Lips," the company was never explicitly referenced. (Simon Dep. at 64). Yet if White was not acting at the direction of Simon, then who was White working for?[3]

As noted in the Court's order denying motions for summary judgment in the underlying tort action, this case presents unique and hotly disputed facts. The record, as it now exists, simply does not allow the Court to conclude that John Lamensdorf was an "employee" of Pen Pals as a matter of law. Accordingly, because there is a genuine issue of material fact regarding whether John Lamensdorf was an employee of Pen Pals, North

---

[3] This illustrates the fine line that the Lamensdorfs attempt to walk, both in this action and in the underlying tort action in which they try to navigate around the exclusive remedy provision of the Georgia Workers' Compensation Act. O.C.G.A. § 34-9-11(a). In that case, the question can be put this way: If White, who was in charge of lighting, operated independently of Simon and Pen Pals, and given that Welin was operating lighting equipment, how can Pen Pals be liable for Welin's negligence?

American has failed to prove that it owes no duty to defend or indemnify Pen Pals against the Lamensdorfs' claims, and summary judgment is inappropriate.[4]

## B. Coverage for NES' crossclaim against Pen Pals

North American also contends that its policy does not provide coverage to Pen Pals for NES' crossclaim because the claims do not arise out of a bodily injury. Rather, North American contends NES is suing Pen Pals for breach of contract. NES argues in response that its Rental Agreement with Pen Pals is an "insured contract," which is covered by North American's policy.

North American's standard commercial general liability policy excludes coverage for "contractual liability." Specifically, the policy does not provide coverage for "'bodily injury' … for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Doc. 39-9, at 8). However, the policy provides an exception to this exclusion for "insured contracts." An insured contract is defined as:

> [t]hat part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Doc. 39, at 19). Interestingly, there is also an insured contract exception to the policy's employee-injury exclusion. This means that even if the employee-injury exclusion is found to bar coverage for the Lamensdorfs' claim against Pen Pals, coverage can still exist for NES' crossclaim if the Rental Agreement constitutes an insured contract.

---

[4] Because North American is not entitled to summary judgment on the Commercial General Liability policy, there is no need to address now the Lamensdorfs' claim that coverage is provided by North American's Business Auto policy.

NES argues that Pen Pals assumed its tort liability because the Rental Agreement states:

> Customer agrees to fully indemnify and hold harmless [NES] against any and all costs, claims, demands, or suits, pending or threatened (including costs of defense, attorney's fees, expert witness fees, investigation and all other costs of litigation) for any and all bodily injury, death, destruction, property damage, or any other costs, damages or loss, regardless of whether such injury, death, destruction, damage or loss is caused in whole or in part by negligence, which in whole or in part, arise out of, result from, or relate to the use, operation, condition, or presence of the Equipment except when such injury, damage or loss is caused solely by the gross negligence or willful misconduct of [NES].

(Doc. 61-3, at 3).

On its face, it would seem that North American's policy clearly provides coverage for NES' crossclaim. Pen Pals, as a part of a contract pertaining to its business, assumed the tort liability of NES to pay for bodily injury to third parties. Indeed, this is one of the two typical scenarios in which coverage for insured contracts is implicated. The other is illustrated by *Cowan Systems, Inc. v. Harleysville Mutual Insurance Co.*, 457 F.3d 368 (4th Cir. 2006). In *Cowan*, the insured, a trucking company, entered into a contract with a customer for the delivery of goods to the customer's premises. As a part of the contract, the customer required, in exchange for allowing the trucking company access to its facility, the trucking company to indemnify the customer if the customer was sued in tort. When the trucking company's driver slipped and fell on the customer's premises and then sued the customer for its alleged negligence, the customer brought a third-party complaint for indemnity against the trucking company. The trucking company's insurer declined to defend the trucking company and "[the trucking company] defended itself in the underlying action at its own expense and obtained summary judgment in its favor." *Id.* at 371. The

trucking company then sought a declaration that its insurer had a duty to defend it in the underlying action.

The Fourth Circuit held that the indemnity agreement was an insured contract and thus the trucking company's insurer was obligated to reimburse the trucking company for all of its costs and expenses in defending the underlying litigation, as well as its attorney's fees associated with the declaratory judgment action. The fact that the trucking company did not cause the driver's injury and the fact that the trucking company was only being sued in contract made no difference. The trucking company's agreement to indemnify the customer was an insured contract, and therefore the liability created by the contract was insured by the trucking company's policy.

North American does not deny that, generally speaking, indemnity agreements such as the one at issue here can fall within the insured contract exception to the standard commercial general liability policy exclusion for contractual liability. Rather, it contends that the law in Georgia is to the contrary. North American's argument is based entirely on the Georgia Court of Appeals' decision in *Scottsdale Insurance Co. v. Great American Assurance Co.,* 271 Ga. App. 695, 610 S.E.2d 558 (2005). Indeed, at oral argument, counsel for North American conceded that pursuant to its interpretation of *Scottsdale,* insured contract clauses in Georgia commercial general liability would have no meaning at all. The question, then, is whether *Scottsdale* has effectively written coverage for insured contracts out of the standard commercial general liability policy in Georgia.

The task of deciphering the brief opinion in *Scottsdale* is made harder by a critical factual mistake in the opinion. The major parties in *Scottsdale* were Pearle Vision, Inc., Moresi & Blum, P.C., a professional corporation consisting of Dr. Peter Moresi and Dr. Robert Blum, and Dr. Kendall Mullins. The opinion states that Moresi & Blum was the

lessor, Pearle was the sublessor, and Mullins was the sublessee.  Actually, Pearle was the lessor, Moresi & Blum was the sublessor, and Mullins was the sublessee.[5]  The lease agreement between Pearle and Moresi & Blum contained a provision in which Moresi & Blum agreed to "'indemnify [Pearle] and save it harmless from all suits, actions, damages, liability and expense in conjunction with loss of life, bodily or personal injury or property damage arising from or out of any occurrence in, upon, at or from the Leased Premises....'" *Scottsdale*, 271 Ga. App. at 695, 610 S.E.2d at 559.

Melissa Neill sued Mullins, Pearle, and several other parties alleging Mullins misdiagnosed her medical condition.[6]  Presumably, but not certainly, Neill contended Drs. Moresi and Blum and Pearle were either vicariously liable for Mullins' malpractice[7] or they somehow negligently retained Mullins.  In any event, it is clear that neither Drs. Moresi and Blum nor Pearle were a party to Mullins' misdiagnosis of Neill.  Pearle later filed a third-party complaint against Dr. Moresi, Dr. Blum, and Moresi & Blum, P.C.  Moresi & Blum's insurer, Great American Assurance Company, refused to provide a defense to Dr. Moresi, Dr. Blum, and Moresi & Blum for the claims asserted by Pearle because Mullins was not an employee of Moresi & Blum and therefore was not covered by its policy.

Pearle's insurer, Scottsdale Insurance Company, settled with Neill and brought a claim against Moresi & Blum to "[seek] recovery of some or all the amounts paid by Scottsdale/Pearle to fund the settlement in the Neill Litigation." (Doc. 76-2, at 6).  Again,

---

[5] NES filed, without objection, documents from the *Scottsdale* record with the Court.

[6] Specifically, Neill sued Dr. Kendall Mullins, Dr. Jon L. Barber, Dr. Keith M. Stillions, Dr. Joon Kim, Dr. Kirk Smick, Dr. Bruce Dahrling, Pearle Vision, Inc., Downtown Opticians, Inc., and The Eye Care Centers Management, Inc. d/b/a Clayton Eye Center.  (Doc. 76-1, at 6-7).

[7] The fact that the underlying tort was malpractice or professional negligence injects another level of complexity in the interpretation of *Scottsdale*.  Although the opinion makes no mention of the fact that the standard commercial general liability policy does not provide coverage for professional negligence, the *Scottsdale* record reveals this very much was a point of contention in the case.

Great American denied coverage to Moresi & Blum and refused to provide a defense in the action brought by Scottsdale. *Id.*

After obtaining a $3 million judgment against Moresi & Blum, Scottsdale filed a direct action against Great American to collect its judgment. The trial court granted Great American's motion for summary judgment on the ground that Scottsdale's claim was not covered by Moresi & Blum's policy with Great American.

On appeal, Scottsdale argued that the claim fell within the insured contract exception to Great American's contractual liability exclusion. The Court of Appeals did not reach that issue. Rather, the court held that, pursuant to the policy, "Great American was obligated to pay only those sums that Moresi & Blum was itself obligated to pay as damages *because of* bodily injury, personal injury, property damage, or advertising injury." *Scottsdale*, 271 Ga. App. at 696, 610 S.E.2d at 560 (emphasis in original). The court recognized that "[a]lthough the underlying event giving rise to Scottsdale's claim involved a personal injury, Great American did not insure against Moresi & Blum's failure to abide by the terms of its lease agreement with Pearle." *Id.* The court stated that it was not necessary to address Scottsdale's argument that the insured contract exception applied because courts must consider whether the policy covered the claim before addressing whether an exclusion or exception to an exclusion applies. *Id.* Accordingly, the Court of Appeals affirmed the grant of summary judgment in favor of Great American.

North American's interpretation of *Scottsdale* focuses on the question of whether the injury at issue was a bodily injury under the insured's policy. Indeed, the bodily injury in *Scottsdale* was not a bodily injury within the scope of Moresi & Blum's policy with Great American. Neill's injury at the hands of Mullins, who was not insured by Great American's policy, triggered no coverage under Great American's policy. However, that is not the

case here.  John Lamensdorf's death, allegedly caused by the negligence of Pen Pals and its alleged employee, clearly constitutes a bodily injury under North American's policy. While it is true that coverage for that bodily injury may be excluded, e.g., by the employee-injury exclusion, that does not change the fact that John Lamensdorf's death is a bodily injury within the scope of North American's policy.  This is sufficient to distinguish *Scottsdale* from the present case.

In all honesty, however, the Court is not entirely comfortable with this distinction. First, no case or commentary suggests that the application of the insured contract exception is dependent on a threshold finding that the underlying bodily injury is covered by the policy.  *Clarendon Nat. Ins. Co. v. United Fire & Cas. Co.*, 571 F.3d 749 (8th Cir. 2009); *Cowan*, 457 F.3d 368; *United Nat'l Ins. Co. v. Scottsdale Ins. Co.*, 2011 WL 839397 (E.D.N.Y. 2011); *United Nat'l Ins. Co. v. Int'l Petroleum & Exploration*, 2007 WL 4561460 (D. Utah 2007); *Harleysville Mut. Ins. Co. v. Reliance Nat. Ins. Co.*, 256 F. Supp. 2d 413 (M.D.N.C. 2002); 3-18 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 18.03[3].  For example, in *Cowan*, the truck driver's injury was not, in itself, a bodily injury within the scope of the trucking company's policy.  There was no contention that the trucking company was liable for that injury.  However, because of the trucking company's insured contract with its customer, the trucking company's insurer had to provide coverage to its insured.

Second, the Court acknowledges that *Scottsdale* can be read to hold that a commercial general liability policy can never cover any occurrence that arises in contract even though that occurrence clearly falls within the scope of the insured contract exception to the exclusion for contractual liability in the standard commercial general liability policy. This interpretation would require the Court to ignore the clear language of the policy and

the substantial body of law and commentary to the contrary. The Court cannot accept that this was the intent of the Georgia Court of Appeals in *Scottsdale.*

Nevertheless, the fact that John Lamensdorf's death was a bodily injury within the scope of Pen Pals' policy clearly distinguishes *Scottsdale*. Accordingly, because NES' crossclaim for indemnification pursuant to the Rental Agreement is clearly an insured contract under North American's policy, and because *Scottsdale* is distinguishable, North American's Motion for Summary Judgment is denied and NES' Cross-Motion for Summary Judgment is granted to the extent that it seeks a declaration that the Rental Agreement is an insured contract.

### III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **DENIED** on all claims and the Cross-Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The Cross-Motion for Summary Judgment is **DENIED** to the extent it seeks any relief beyond a declaration that the Rental Agreement is an insured contract.

**SO ORDERED**, this the 17th day of May, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT