UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
475 MULBERRY STREET
P. O. BOX 65
MACON, GEORGIA 31202-0065

CHAMBERS OF
MARC T. TREADWELL
JUDGE

TELEPHONE: 478-752-3500
TELECOPIER: 478-752-3502

July 14, 2011

**VIA CM/ECF**

| | |
|---|---|
| Mr. Seth F. Kirby<br>Attorney at Law | Mr. Wallace Miller III<br>Attorney at Law |
| Mr. Joshua B. Portnoy<br>Attorney at Law | Mr. Martin A. Rosen<br>Attorney at Law |
| Mr. Philip W. Savrin<br>Attorney at Law | Mr. Steven R. Thornton<br>Attorney at Law |

      **RE: North American Special Ins. Co. v. Pen Pals, *et al.*
           Civil Action No. 5:10-CV-191(MTT)**

Dear Counsel:

      At the pretrial conference, all parties agreed that the question of whether the self-propelled Genie lift operated by Welin was covered by North American's business auto policy could be decided as a matter of law. The Parties further agreed the sole issue was whether the lift fell within paragraph K.6.b. of Section V. of the policy. North American did not move for summary judgment on this issue, but rather contended, initially, that the automobile policy was not at issue. However, North American said in its reply brief that this issue could be decided as a matter of law, and it later agreed the issue could be resolved in this action. Because the facts are undisputed and the sole question is the construction of the policy, I agree that the issue can be decided as a matter of law. Therefore, this issue will not be submitted to the jury. I will enter an order granting summary judgment to North American on that issue for the reasons stated below.

      Paragraph K.6.b. states that self-propelled "cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers" are "autos" rather than "mobile equipment," and thus are vehicles covered by the business auto policy. The commercial general liability policy contains similar language. The clear intent of the policies is to draw a line between vehicles that are classified as autos and vehicles that are classified as mobile equipment for the purpose of determining which policy provides coverage for such vehicles.

      The Lamensdorfs argue that paragraph K.6.b. covers two categories of vehicles: (1) self-propelled cherry pickers and (2) similar devices mounted on automobile or truck chassis. In other words, they argue that the requirement of being mounted on an automobile or truck chassis applies only to similar devices and not to cherry pickers. The Genie lift, which is not mounted on an automobile or truck chassis, is a self-propelled cherry picker, and thus is an "auto" covered by the business auto policy.

North American argues that the requirement of being mounted on an automobile or truck chassis applies to both cherry pickers and similar devices. Thus, the Genie lift is "mobile equipment" not covered by the business auto policy. North American argues that the clear intent of paragraph K.6.b. is to describe vehicles such as electrical utility vehicles, e.g., a truck with a cherry picker attached, that likely will be operated on public roads.

Viewed in isolation, paragraph K.6.b. is arguably ambiguous.[1] However, viewing Section V.K. in its entirety, it is clear that the business auto policy does not provide coverage for the self-propelled Genie lift.

Section V.K. begins by defining "mobile equipment" to include land vehicles described in paragraphs K.1. through K.4. Paragraph K.1 describes "[b]ulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads." Without question, this description includes the Genie lift. Paragraph K.6. addresses vehicles **not** described in paragraphs K.1. through K.4. Paragraph K.6. then describes types of self-propelled vehicles that will be considered "autos" rather than "mobile equipment." For example, paragraph K.6.a. includes snow plows, street cleaners, and road maintenance (but not construction or resurfacing) vehicles. Paragraph K.6.a. supports North American's argument that the exceptions in paragraph K.6. are intended to include utility-type vehicles that may be operated on public roads although they may perform functions not traditionally associated with autos or trucks. However, paragraph K.6.c. describes self-propelled vehicles with permanently attached "[a]ir compressors, pumps and generators . . . ." The Lamensdorfs argue that this provision would include any self-propelled vehicle with an air compressor even if it were self-propelled in the same manner that the Genie lift is self-propelled, and thus was not intended for use on public roads. Their point is that the exceptions found in paragraph K.6. are not limited to utility vehicles that might be operated on public roads.

Finally, North American points to paragraph K.5.b. That paragraph defines as "mobile equipment" any vehicle not described in paragraphs K.1. through K.4. that is not self-propelled and which provides mobility to "cherry pickers and similar devices used to raise or lower workers." While that paragraph does not describe the self-propelled Genie lift, North American's point is that it clearly equates as one type of vehicle both cherry pickers and similar devices used to raise or lower workers. Therefore, the qualifying language in paragraph K.6.b. should be read to apply to both cherry pickers and similar devices used to use or lower workers.

---

[1] Only arguably ambiguous because the absence of a comma after cherry pickers supports North American's reading of paragraph K.6.b.

Mr. Seth F. Kirby
Mr. Joshua B. Portnoy
Mr. Philip W. Savrin
July 14, 2011
Page 3

Mr. Wallace Miller III
Mr. Martin A. Rosen
Mr. Steven R. Thornton

_____

After applying appropriate rules of construction, I have concluded that paragraph K.6.b. describes cherry pickers mounted on automobile or truck chassis. Because the Genie lift is not mounted on an automobile or truck chassis, it is not described in paragraph K.6.b. Rather, the self-propelled Genie lift falls within the general definition of vehicles described in paragraph K.1. designed for use principally off public roads. This is consistent with the clear intent of Section V.K. to include in the definition of "autos" utility vehicles that reasonably could be used on public roads. I acknowledge that paragraph K.6.c. can be read to conflict with the general intent of paragraph K., but this potential conflict is not sufficient to render paragraph K.6.b. ambiguous.

Given the circumstances, I do not view my ruling to be a *sua sponte* entry of summary judgment. The undisputed facts are in the record. All parties agree that this is a question of law and the issue has been thoroughly briefed and argued. Nevertheless, I will allow any party until July 21 to submit any additional authority or argument.[2]

With best regards.

Sincerely,

s/Marc T. Treadwell

Marc T. Treadwell

MTT:tlh
Cc: Mr. David A. Dial
 Ms. Lindsay M. Gatling

---

[2] We also found *Scottsdale Ins. Co. v. State Farm Mutual Auto Ins. Co.*, which Mr. Savrin cites in his letter. It seems that anything associated with Scottsdale only adds confusion to this case. I understand the holding in *Scottsdale*, and it is consistent with my conclusion here. I do not understand the statement y the court that although Scottsdale's policy did not provide liability coverage for the truck, it did provide liability insurance for the cherry picker mounted on the truck.