IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. 5:10-CV-191 (MTT) |
| PEN PALS PRODUCTIONS, LLC, *et. al*, ) ) | |
| Defendants. ) ) | |

## ORDER

This matter is before the Court on further consideration of Plaintiff North American Specialty Insurance Company's Motion for Summary Judgment. In its previous Order denying North American's motion, the Court deferred ruling on the issue of whether a Genie lift is covered by North American's business auto policy. (Doc. 95, at 6 n.4). For the following reasons, the Court now rules that the Genie Z45/25 RT lift is "mobile equipment," and thus is not an "auto" covered by the business auto policy.

### I.     PROCEDURAL AND FACTUAL BACKGROUND

This declaratory judgment action arises out of a wrongful death lawsuit filed by Michael and Kathy Lamensdorf. *Lamensdorf v. Welin*, 5:09-CV-424 (MTT). The Lamensdorfs' son, John, received a fatal electrical shock when a Genie Z45/25 RT lift came into contact with overhead power lines while he was working on the set of a film entitled "Lovely Lying Lips." Stephen Michael Simon, one of John Lamensdorf's New York University classmates, directed the film. The Lamensdorfs filed suit against numerous parties, including Pen Pal Productions, LLC, a company formed by Simon's father, and NES Equipment Services Corporation, the entity from which the aerial lift was rented. NES

asserted a crossclaim against Pen Pals alleging that Pen Pals had a duty to indemnify it pursuant to an indemnity provision in the Rental Agreement. The facts are set forth in detail in an order entered May 17, 2011 in *Lamensdorf v. Welin* (Doc. 178).

North American, Pen Pals' insurer, filed this action seeking a declaration that its commercial general liability policy, provides no coverage for the claims asserted against Pen Pals. North American then moved for summary judgment on the grounds that (1) the employee-injury exclusion in its policy excludes coverage for the Lamensdorfs' claims and (2) NES' claims are not covered by its policy because NES' claims are based in contract.[1] In their response, the Lamensdorfs argued, among other things, that coverage existed because the Genie lift is an "auto" covered by the business auto policy.

North American responded that its declaratory judgment complaint only addressed its commercial general liability policy and thus the Lamensdorfs "cannot assert rights on the policy that has not been placed in issue in this declaratory judgment action." (Doc. 94). The Court then entered its Order denying North American's Motion for Summary Judgment and granting in part and denying in part NES' Cross-Motion for Summary Judgment. (Doc. 95). The Court expressly did not rule on whether the business auto policy provided coverage.

North American then submitted a letter "withdraw[ing] its objections to the business auto policy being at issue." (Doc. 96). At a pretrial conference on July 13, the Parties agreed that a determination of whether the Genie lift is an "auto" covered by the business auto policy was an issue for the Court to decide. This Order follows the Court's July 15 letter informing the Parties of its interpretation of the business auto policy, but giving the

---

[1] NES filed its Cross-Motion for Summary Judgment alleging that coverage exists because the Rental Agreement with Pen Pals falls within the "insured contract" exception to the employee-injury and "contractual liability" exclusions.

Parties until July 21, 2011 to submit additional authority or arguments. (Doc. 109). No additional authority or arguments have been submitted.

## II. DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

The Genie lift at issue is a four-wheeled self-propelled articulating boom that can reach 5 mph when stowed. (Plaintiff's Trial Exhibits 25-26). The Genie lift extends 45 feet vertically when fully extended and has a horizontal reach of 25 feet.

The business auto policy covers "damages because of 'bodily injury' or 'property damage' … caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Doc. 54-3, at 9). "Auto" is defined as a "land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or [a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." (Doc. 54-3, at 16-17). "However, 'auto' does not include 'mobile equipment.'" (Doc 54-3, at 17). Thus, the question is whether the Genie lift is an "auto" or whether it is "mobile equipment."

The Lamensdorfs contend that subparagraph K.6.b. of the policy defines the Genie lift as an "auto." That subparagraph states that self-propelled "cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers" are "autos" rather than "mobile equipment," and thus are vehicles covered by the business auto policy. (Doc 54-3, at 18). The commercial general liability policy contains similar language. The clear intent of the policies is to draw a line between vehicles that are classified as "autos" and vehicles that are classified as "mobile equipment" for the purpose of determining which policy provides coverage for such vehicles.

The Lamensdorfs argue that subparagraph K.6.b. covers two categories of vehicles: (1) self-propelled cherry pickers and (2) similar devices mounted on automobile or truck chassis. In other words, they argue that the requirement of being mounted on an automobile or truck chassis applies only to similar devices and not to cherry pickers. The Genie lift, although not mounted on an automobile or truck chassis, is a self-propelled cherry picker, and thus is an "auto" covered by the business auto policy.

North American argues that the requirement of being mounted on an automobile or truck chassis applies to both cherry pickers and similar devices. Thus, the Genie lift is "mobile equipment" and thus not covered by the business auto policy. North American argues that the clear intent of subparagraph K.6.b. is to describe vehicles such as electrical utility vehicles, i.e., a truck with a cherry picker attached, that likely will be operated on public roads.

Viewed in isolation, subparagraph K.6.b. is arguably ambiguous.[2] However, viewing Section V.K. in its entirety, it is clear that the business auto policy does not provide coverage for the self-propelled Genie lift.

Section V.K. begins by defining "mobile equipment" to include land vehicles described in paragraphs K.1. through K.4. Paragraph K.1 describes "[b]ulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads." (Doc. 54-3, at 18). Without question, this description includes the Genie lift. Paragraph K.6. addresses vehicles **not** described in paragraphs K.1. through K.4. Paragraph K.6. then describes types of self-propelled vehicles that will be considered "autos" rather than "mobile equipment." For example, subparagraph K.6.a. includes snow plows, street cleaners, and road maintenance (but not construction or resurfacing) vehicles. Subparagraph K.6.a. supports North American's argument that the exceptions in paragraph K.6. are intended to include utility-type vehicles that may be operated on public roads although they may perform functions not typically associated with automobiles or trucks. However, subparagraph K.6.c. describes self-propelled vehicles with permanently attached "[a]ir compressors, pumps and generators . . . ." (Doc. 54-3, at 18). The Lamensdorfs argue that this provision would include any self-propelled vehicle with an air compressor even if it were self-propelled in the same manner that the Genie lift is self-propelled, and thus was not intended for use on public roads. Their point is that the exceptions found in paragraph K.6. are not limited to utility vehicles that might be operated on public roads.

---

[2] Only arguably ambiguous because the absence of a comma after cherry pickers supports North American's reading of subparagraph K.6.b.

Finally, North American points to subparagraph K.5.b. That subparagraph defines as "mobile equipment" any vehicle not described in paragraphs K.1. through K.4. that is not self-propelled and which provides mobility to "cherry pickers and similar devices used to raise or lower workers." (Doc. 54-3, at 18). While that subparagraph does not describe the self-propelled Genie lift, North American's point is that it clearly equates as one type of vehicle both cherry pickers and similar devices used to raise or lower workers. Therefore, the qualifying language in subparagraph K.6.b. should be read to apply to both cherry pickers and similar devices used to use or lower workers.

After applying appropriate rules of construction, the Court concludes that subparagraph K.6.b. describes cherry pickers mounted on an automobile or truck chassis. Because the Genie lift is not mounted on an automobile or truck chassis, it is not described in subparagraph K.6.b. Rather, the self-propelled Genie lift falls within the general class of vehicles described in paragraph K.1. designed for use principally off public roads. This is consistent with the clear intent of Section V.K. to include in the definition of "autos" utility vehicles that reasonably could be used on public roads. The Court acknowledges that subparagraph K.6.c. can be read to conflict with the general intent of Section V.K., but this potential conflict is not sufficient to render subparagraph K.6.b. ambiguous.

### III.     CONCLUSION

For the foregoing reasons, the Genie Z45/25 RT lift is "mobile equipment" not covered by the business auto policy. Accordingly, summary judgment is entered for North American on the Lamensdorfs' claim that North American's business auto policy provides coverage for claims asserted in *Lamensdorf v. Welin*.

**SO ORDERED**, this the 22nd day of July, 2011.

                                         S/ Marc T. Treadwell
                                         MARC T. TREADWELL, JUDGE
                                         UNITED STATES DISTRICT COURT